# Exhibit H

1996 WL 1186879
Only the Westlaw citation is currently available.
Superior Court of Massachusetts.

David CONNOR,
v.
GENERAL ELECTRIC COMPANY et al.[1]
No. 942074.
|
April 1, 1996.

MEMORANDUM OF DECISION AND ORDER ON
DEFENDANTS' MOTIONS FOR SUMMARY
JUDGMENT

BRASSARD.

**\*1** This case comes before the court on the defendants' motion for summary judgment. In the underlying action, the plaintiff sets forth eight counts against the defendants. He alleges that his resignation from General Electric was ineffective because it was obtained as the result of duress; that General Electric breached its contractual agreement with him; and that it violated its contractual duty of good faith and fair dealing. He also asserts four counts against the defendants for defamation, including two in which he seeks to hold General Electric vicariously liable for damages arising from allegedly defamatory statements made by its employees. Lastly, he seeks to hold each defendant liable for intentional infliction of emotional distress.

For the reasons set forth below, summary judgment is *ALLOWED* for the defendants on Counts I, II, VI, VII and VIII, and is *DENIED* on Counts III, IV and V.

BACKGROUND

The plaintiff, David Connor ("Connor") is a former employee of defendant General Electric Company ("GE" or "Company"), who worked at GE's plant in Fitchburg. Connor was employed by GE for approximately six years, until he resigned on April 12, 1994. At the time he resigned, Connor was a supervisor in the Fitchburg

plant's "South Bay" area. Defendant Michael J. Sims ("Sims") was, at all relevant times, the Manager of Manufacturing at the Fitchburg plant; and defendant Michael Edicola ("Edicola") was, at all relevant times, the Manager of Human Resources at the Fitchburg plant.

Connor did not have a written employment contract for a specific term with GE. However, in performance reviews given him by his supervisors, they told him that they were pleased with his job performance and that they thought that he could have a bright future with the Company.

The Company provides each employee with a copy of its policy manual. Section 20.2 of the manual states that employees "[m]ust provide a work environment free of harassment of any kind based on diverse human characteristics and cultural backgrounds," and prohibits "[h]ostile or demeaning behavior based on an employee's race [or] color. ." According to the manual, "[e]ach managerial employee is responsible for applying this policy within the manager's component." A manager violates the Company policy if he "fail[s] to demonstrate the leadership and diligence needed to ensure compliance with GE policies." Violation of the Company's policies can result in disciplinary action "up to and including discharge."

In early 1994, GE conducted a thorough investigation in response to complaints of racial harassment by an employee named Wilfred Payton ("Payton"). Payton, who worked under Connor in the South Bay area of the Fitchburg plant, alleged that some of his coworkers had engaged in a pattern of racial harassment against him. The transcripts of numerous interviews conducted during the investigation revealed that, while some employees believed that no incidents of harassment had occurred and that any behavior directed toward Payton was of a teasing nature, numerous other employees believed that incidents of racial harassment were commonplace and that they had observed incidents which they considered to be harassment. The transcripts did not reveal that Connor was directly involved in any of the incidents.

**\*2** On April 12, 1994, Connor was called into a meeting with Sims and Edicola. At the meeting, Edicola informed Connor that, as a result of the investigation of Payton's complaints, the Company determined that his conduct as a supervisor was unacceptable because he failed to demonstrate the leadership necessary to prevent harassment and intimidation in the workplace. Edicola told Connor that he had the option to either be discharged, or to resign immediately and sign a release letter ("the release"). The release stated that Connor would "waive

and discharge GE, [and] its ... employees ... from each and every claim, action or right of any sort ... in connection with her [sic] employment with GE arising on or before the effective date of this Release." Edicola handed the release to Connor, who then read it over. Connor asked Sims and Edicola which option he should take, but they refused to advise him. Connor then signed the Release.

Subsequent to Connor's resignation, the Company held meetings with employees of the Fitchburg plant, during which the issue of racial harassment was discussed. The employees were informed that as a result of the investigation, some disciplinary actions were taken.

## DISCUSSION

This court grants summary judgment where there are no genuine issues of material facts and where the summary judgment record entitles the moving party to judgment as a matter of law. *Cassesso v. Commissioner of Correction,* 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); *Community National Bank v. Dawes,* 369 Mass. 550, 553, 340 N.E.2d 877 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. *Pederson v. Time, Inc.,* 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). The nonmoving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving party. *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 711, 575 N.E.2d 734 (1991), citing *Celotex v. Catrett,* 477 U.S. 317, 322 (1986).

The plaintiff has set forth eight Counts against the defendants. Count I states a claim for wrongful termination of the plaintiff's employment with General Electric; and Counts II and IV state claims for breach of contract. In Counts III, VI and VII, the plaintiff alleges that the defendants defamed him. In Count V he asserts a claim for intentional infliction of emotional distress; and in Count VIII he alleges that his resignation from General Electric was obtained through fraud, deception and duress.

### 1. The Resignation and Release:

The Court first addresses the issue of whether or not the

plaintiff's resignation and release are effective. The plaintiff has submitted no evidence to support his allegation in the Complaint that the resignation and release were obtained "through the use of fraud and deception." Rather, he argues that they are ineffective because they were obtained under duress. In support of this proposition, the plaintiff argues that the ultimatum given him by Sims and Edicola, to either resign immediately or be terminated for cause, induced in him such a state of shock that his will was overborne. He contends that he was accused of racism, that he was supporting a family, and that he was in a bargaining position inferior to that of the defendants; and he argues that, in light of these factors, the actions of Sims and Edicola amounted to "illegal and immorally applied pressure of social and economic disaster." The plaintiff's argument is unsupported by the record, and summary judgment is therefore granted for the defendant on Count VIII.

**\*3** First, the plaintiff has submitted no evidence indicating that either Sims or Edicola accused him of racism during their meeting with him. Rather, the record reveals that, after an exhaustive investigation of Payton's complaints, Sims and Edicola became concerned that the plaintiff did not properly supervise his work area. Edicola expressed concern to the plaintiff that, as a result of such improper supervision, employees *other than the plaintiff* may have engaged in racially insensitive behavior. This accusation did not even indicate that the plaintiff knew of such behavior by his subordinates. Rather, Edicola stated his concern that the plaintiff's insufficient supervisory skills prevented him from becoming informed of such incidents.

The other two factors relied upon by the plaintiff (the need to support his family and his inferior bargaining position), though not insignificant, do not support the argument that his will was overborne as a result of economic duress applied by the defendants. To sustain a claim of economic duress, a party must show "(1) that one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." *International Underwater Contractors, Inc. v. New England Tel. & Tel.,* 8 Mass.App.Ct. 340, 342, 393 N.E.2d 968 (1979), (quotations omitted).

In the present case, the third factor of the *International Underwater Contractors* test is determinative. "Merely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion ... The assertion of duress must be proved by evidence that the duress resulted from

Connor v. General Elec. Co., Not Reported in N.E.2d (1996)

defendant's wrongful and oppressive conduct and not by plaintiff's necessities." *Id.* (Citations and quotations omitted.) The defendant in *International Underwater Contractors* insisted on substantial deviations from a contract and repeatedly assured the plaintiff that it would pay the additional costs, but then refused to make the additional payments. Unlike the International Underwater Contractors defendant, the defendants in the present case did not induce the plaintiff to change his financial situation. While it is undisputed that the plaintiff depended upon his salary to support his spouse and young children, this financial situation is in the nature of necessities, and is not the result of wrongful or oppressive conduct by the defendants. The defendants did not promise the plaintiff that he would be employed for a specific period of time. To the contrary, the plaintiff was an employee-at-will, who could be discharged at any time. (See part 2, *infra*.)

The plaintiff's inability to prove an essential element of his claim that his resignation and release were obtained through duress "renders all other facts immaterial" and mandates summary judgment in favor of the defendant on Count VIII. *Kourouvacilis v. General Motors Corp., supra* at 711, 575 N.E.2d 734. Because his resignation and release are valid and effective, the plaintiff's contractual claims are barred, and summary judgment must be granted on counts I, II and VIII.

2. The Contractual Claims:

**\*4** Even if the Court were to hold that the plaintiff's resignation and release resulted from duress, the plaintiff could not survive the summary judgment motion on his contractual claims in Counts I and II. There is no evidence in the record which would support the plaintiff's claim that he had a contract of employment until his retirement, nor to support his contention that his termination was in violation of public policy or was in violation of the defendants' duty of good faith and fair dealing.

The plaintiff claims that the predictions of his supervisors that he could have a bright future with the company amounted to a contract of employment until his retirement. Lifetime employment contracts, however, "are extraordinary in their nature and strong proof is required to establish their due formation." *Gregory v. Raytheon Service Co.,* 27 Mass.App.Ct. 1170, 1171, 540 N.E.2d 694 (1989), rev. denied 405 Mass. 1205 (1989). Comments which simply reflect a bright future for the company and the employee are insufficient to serve as the

basis for a permanent employment contract. *Rydman v. Dennison Mfg. Co.,* 373 Mass. 855, 855, 366 N.E.2d 763 (1977); *Gregory v. Raytheon Service Co., supra* at 1171, 540 N.E.2d 694. In addition to establishing proof that the comments were of a specific nature, the plaintiff must produce evidence that his supervisors had actual, implied or apparent authority to bind the Company to a contract, and that he (the plaintiff) ratified the contract. *Boothby v. Texon, Inc.,* 414 Mass. 468, 476-77, 608 N.E.2d 1028 (1993). Contrary to what the plaintiff would have the Court believe, his supervisors did not have actual, implied or apparent authority to bind GE, and their predictions were not promises. The supervisors merely gave him reviews where they made predictions of what he could possibly accomplish if he performed his job competently. The supervisors' comments were general, nonspecific expressions which in no way indicated that the plaintiff could remain with the company for a specific period of time; and they certainly did not guarantee that he could remain an employee even if his supervisory abilities were deemed unsatisfactory.

Without a contract for a specific term, the plaintiff was an employee-at-will. *Jackson v. Action for Boston Community Dev.* 403 Mass. 8, 9, 525 N.E.2d 411 (1988). Thus, either he or GE could terminate the employment "for almost any reason or for no reason at all." *Id.* The defendants could have fired him without even giving him an opportunity to resign. Therefore, summary judgment is granted for the defendants on the plaintiff's breach of contract claim in Count II.

There is no evidence in the record to support the plaintiff's claim in Count I that his discharge was in violation of company policy, that it violated the covenant of good faith and fair dealing, or that it was in violation of public policy. The plaintiff claims that, pursuant to GE's internal policies, he was entitled to "progressive discipline" prior to being discharged. This claim is groundless. The internal policy of the Company, as outlined in the employee manual, makes clear that the GE will protect employees against "[h]ostile or demeaning behavior based on an employee's race," and that "[e]ach manager is responsible for applying this policy within the manager's component." Failure to do so could result in disciplinary action up to and including discharge. The summary judgment record reveals that the Company abided by these polices in its handling of the plaintiff's case.

**\*5** No evidence in the record supports the plaintiff's allegation that the defendants violated their duty of good faith and fair dealing. An employer violates its duty of good faith and fair dealing if it "terminate[s] an

Connor v. General Elec. Co., Not Reported in N.E.2d (1996)

at-will-employee in an effort to deprive the employee of 'compensation for past services,' or an 'identifiable future benefit ... reflective of past services.' " *Gregory v. Raytheon,* 27 Mass.App.Ct. 1170, 1172, 540 N.E.2d 694 (1989), rev. denied 405 Mass. 1205, quoting *Gram v. Liberty Mutual Ins. Co.,* 391 Mass. 333, 335, 461 N.E.2d 796 (1984) [Gram II] and *Gram v. Liberty Mutual Ins. Co.,* 384 Mass. 659, 673, 429 N.E.2d 21 (1981) [Gram I]. The plaintiff has not presented the Court with any evidence to indicate that the defendants attempted to deprive him of any compensation for services performed. To the contrary, he has admitted that he was fully compensated for all services rendered. As with the plaintiff in the *Gregory* case, the plaintiff here "might rue the fact that by the dismissal he lost an opportunity to earn additional remuneration for subsequent performance, but that was no more than the consequence of a lawful dismissal, and leaves him without a claim." *Gregory v. Raytheon, supra,* at 1172, 540 N.E.2d 694.

None of the public policy exceptions to the rule that an employee-at-will may be fired for any reason are applicable in the present case. The plaintiff has not submitted any evidence to indicate that he was discharged to prevent him from asserting a legally guaranteed right, or to prevent or punish him for doing what the law requires, or for refusing to do what the law forbids. See *Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch.,* 404 Mass. 145, 149-50, 533 N.E.2d 1368 (1989); *Mullen v. Ludlow Hosp. Soc.,* 32 Mass.App.Ct. 968, 969-70, 592 N.E.2d 1342 (1992). Instead, the circumstances surrounding the discharge of the plaintiff are analogous to that of the plaintiff in *Folmsbee v. Tech Tool Grinding & Supply, Inc.,* 417 Mass. 388, 630 N.E.2d 586 (1994). In *Folmsbee,* the Supreme Judicial Court held that an employer did not violate public policy where it terminated an employee because of her failure to comply with a lawful internal company policy regarding drug testing. *Id.* at 394, 630 N.E.2d 586. The failure of the plaintiff in the present case to adequately supervise his subordinates, like the refusal of the *Folmsbee* plaintiff to submit to drug testing, amounts to a violation of the company's lawful internal policy, and the company's decision to fire him because of that violation does not violate any well established public policy.

**\*6** For these reasons, as well as the reasons stated in Section 1, *supra,* summary judgment is granted for the defendants as to Counts I and II.

3. Defamation/Slander:

To establish a claim of slander, the plaintiff must show that three elements have been met. First, he must show that the statements held him up to scorn, hatred, ridicule or contempt in the minds of a considerable and respectable segment of the community. *Tartaglia v. Townsend,* 19 Mass.App.Ct. 693, 696, 477 N.E.2d 178 (1985). Second, plaintiff must prove the statements were published by the defendant to individuals other than themselves. *Brauer v. Globe Newspaper Co.,* 351 Mass. 53, 56, 217 N.E.2d 736 (1966). Third, plaintiff must aver that he suffered special damages, and must set forth these damages specifically. *Lynch v. Lyons,* 303 Mass. 116, 119, 20 N.E.2d 953 (1937). Furthermore, where a conditional privilege exists, plaintiff must show that the statements either were knowingly false, or were published maliciously without lawful reason in a conscious effort to ruin his reputation. *McAvoy v. Shufrin,* 401 Mass. 593, 597, 518 N.E.2d 513 (1988).

First, in support of Counts III and IV, the plaintiff claims that defendants Sims and Edicola held a series of meetings with other employees of GE shortly after the plaintiff's discharge, and that the plaintiff was labelled a racist by them at these meetings. In support of Counts VI and VII, he claims that Sims and Edicola slandered him on other, unspecified occasions when they allegedly told members of the public that he was a racist. The defendants' motion for summary judgment is denied on Counts III and IV, and granted on Counts VI and VII.

a. The meeting with GE employees:

The only evidence submitted by the plaintiff in support of his allegation that Sims and Edicola slandered him in the course of carrying out their duties for GE is the affidavit of Douglas Young, an employee of the Company's Fitchburg plant. Mr. Young states that he was present at a meeting held by Sims and Edicola, at which he and the other employees present were informed that Connor had been "fired due to [his] involvement in racial harassment of individuals at the plant." Young also states that the employees were informed that " 'racists' would not be tolerated at GE and ... would be fired."

Although defendants Sims and Edicola strongly deny having made any such statements regarding Connor, Young's affidavit creates a material dispute of fact regarding what was said at the meeting which he attended. The statements attributed to the defendants are clearly of a type which would hold the plaintiff up to scorn, ridicule or contempt, and the plaintiff has averred that he has suffered special damages as a result of the publication, in

Connor v. General Elec. Co., Not Reported in N.E.2d (1996)

the form of extreme emotional distress.

An employer has a conditional privilege to "publish defamatory material if the publication is reasonably necessary to the protection or furtherance of a legitimate business interest." *Foley v. Polaroid Corp.,* 400 Mass. 82, 95, 508 N.E.2d 72 (1987); *Bratt v. International Business Machines Corp.,* 392 Mass. 508, 512-13, 467 N.E.2d 126 (1984). GE certainly has an interest in informing its employees that racism in the workplace will not be tolerated, and the alleged statements at the meeting attended by Young therefore fit squarely within this qualified privilege.

**\*7** To overcome the qualified privilege, the plaintiff must show that Sims and Edicola acted with malevolence. He must establish that the comment was made with knowledge that it was false, with improper motive, or with reckless disregard for its truth, *Ezekiel v. Jones Motor Co.,* 374 Mass. 382, 390-91, 372 N.E.2d 1281 (1978); that the comment was published excessively, *Bratt v. International Business Machines Corp.,* 392 Mass. 508, 515, 467 N.E.2d 126 (1984); or that the comment was made with malice. Malice in this context is defined as "the wilful doing of an injurious act without lawful excuse." *Id.* at 513, 467 N.E.2d 126, quoting *Doan v. Grew,* 220 Mass. 171, 176, 107 N.E. 620 (1915). The summary judgment record includes the transcripts of an exhaustive series of interviews conducted by GE managerial employees during their investigation of Payton's charges. In the hundreds of pages of transcripts of the interviews, there is no indication that the plaintiff knew of, or participated in any of the incidents. While these interviews support the defendants' contention that the plaintiff failed to properly supervise his subordinates, they do not support the allegation that he is a racist. As a result, *if* the defendants stated that the plaintiff was a racist, a reasonable jury might conclude that the statement was made with reckless disregard for the truth, or with malice, thus overcoming the qualified privilege. Summary judgment is denied on Counts III and IV.

b. Other alleged defamatory statements:

The plaintiff claims that defendants Sims and Edicola defamed him on other occasions, outside of the scope of their employment, by calling him a racist. He has submitted absolutely no evidence to support this claim, however. Summary judgment is therefore granted for the defendant on Counts VI and VII.

3. Intentional Infliction of Emotional Distress:

The plaintiff asserts a claim for intentional infliction of emotional distress against Sims, Edicola and GE in Count V. To prove an emotional distress claim, a plaintiff must show "(1) that the actor intended to inflict emotional distress or that he knew or should have known that emotional distress was the likely result of his conduct ... (2) that the conduct was extreme and outrageous, was beyond all possible bounds of decency and was utterly intolerable in a civilized community ... (3) that the actions of the defendant were the cause of the plaintiff's distress ... and (4) that the emotional distress sustained by the plaintiff was severe and of a nature that no reasonable man could be expected to endure it." *Agis v. Howard Johnson Co.,* 371 Mass. 140, 144-45, 355 N.E.2d 315 (1976) (citations and quotations omitted).

The defendant contends that the plaintiff's cause of action for intentional infliction of emotional distress is barred by the release signed by the plaintiff and by the exclusivity provision of the Massachusetts Workers Compensation Act. Where a plaintiff's alleged injuries are compensable under the Workers' Compensation Act, G.L.c. 152, Sections 1, et. seq., the Act provides the employee's exclusive remedy unless the employee, at the time he is hired, provides the employer with a written notice of intent to claim his common law rights. G.L.c. 152, § 24 (1988 ed., Supp.1995). A common law action is barred where a plaintiff suffers a "personal injury" within the meaning of the Act and the injury arises "out of and in the course of [the plaintiff's] employment." G.L.c. 152, § 26 (1988 ed., Supp.1995). Emotional distress arising out of employment is a "personal injury," as that term is defined under the Act. *In Re FitzGibbons' case,* 374 Mass. 633, 637-39, 373 N.E.2d 1174 (1978).

**\*8** The plaintiff claims that he suffered emotional distress as a result of two incidents-his meeting with Sims and Edicola at which he signed the resignation, and the subsequent meeting between Sims, Edicola and the other plant employees at which the plaintiff was allegedly implicated in the racial incidents. Any injury arising from the former incident falls within the exclusivity provision of the Act and is therefore barred. The release letter signed by the plaintiff also bars such a claim, since the alleged injury occurred in connection with the plaintiff's employment and on the effective date of the release. An injury arising from the latter incident, however, does not fall within the exclusivity provision or within the terms of the release, and therefore may be the basis for a common law cause of action.

The discharge of an employee is an act that occurs within the course of the employee's employment. *Mullen v.*

Connor v. General Elec. Co., Not Reported in N.E.2d (1996)

*Ludlow Hosp. Soc.,* 32 Mass.App.Ct. 968, 969, 592 N.E.2d 1342 (1992). Because the plaintiff has submitted no evidence to indicate that he filed a notice of intent to maintain his common law rights, he may not maintain such an action for any injuries arising from his meeting with Sims and Edicola at which he was given the option to either resign or be fired.

Subsequent to the termination of employment, however, an employer is generally not liable for workers' compensation to an employee for injuries which occur after the termination, *Larocque's Case,* 31 Mass.App.Ct. 657, 658-59, 582 N.E.2d 959 (1991), and the exclusivity provision is therefore inapplicable. The meeting referred to in the affidavit of Douglas Young occurred after the plaintiff resigned. Any emotional distress suffered by the plaintiff as a result of statements made by Sims and Edicola at that meeting therefore did not arise in the course of his employment, and the exclusivity provision does not prevent him from maintaining a common law cause of action for such injuries. Because the alleged injury occurred after his employment was terminated, the release signed by the plaintiff on April 12, 1994 also does not bar his claim.

Assuming for the purposes of this summary judgment motion that the statements attributed to Sims and Edicola by Douglas Young were indeed made by them, the Court must deny summary judgment. In light of the fact that the exhaustive investigation by GE did not reveal that the plaintiff was directly involved in any racial incidents, a reasonable jury might conclude that a statement made to the attendees of a large meeting, which statement

suggested that the plaintiff was directly involved in the incidents, was extreme and outrageous and could cause severe emotional distress. (Contrast this holding with that of the Court in the companion case, *Young v. General Electric,* 94-2073, where the investigation revealed a pattern of participation in racial incidents by the plaintiff). The record reveals that the plaintiff consulted a doctor due to stress ailments shortly after leaving the employ of GE. Viewed in a light most favorable to the plaintiff, these facts are sufficient to maintain a cause of action against Sims and Edicola for intentional infliction of emotional distress. It is undisputed that Sims and Edicola were acting within the scope of their employment when they held the meeting with the plant employees, and thus GE may be vicariously liable for their actions.

ORDER

**\*9** For the foregoing reasons, it is hereby *ORDERED* that summary judgment be *ALLOWED* for the defendants on Counts I, II, VI, VII and VIII, and *DENIED* on Counts III, IV and V.

**All Citations**

Not Reported in N.E.2d, 1996 WL 1186879

Footnotes

1    Michael J. Sims and Michael T. Edicola.

End of Document    © 2017 Thomson Reuters. No claim to original U.S. Government Works.