# Exhibit I

1995 WL 1146823
Only the Westlaw citation is currently available.
Superior Court of Massachusetts.

Bernard J. MCTERNAN III,
v.
HALEY & ALDRICH, INC.

No. 945905.
|
Sept. 25, 1995.

MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

SMITH.

*1 This matter comes before the court on the motion for summary judgment of defendant Haley & Aldrich, Inc. (H & A) pursuant to Mass.R.Civ.P. 56. In the underlying action, plaintiff asserts two alternate claims against defendant: breach of an oral employment contract; and promissory estoppel. Defendant advances four theories in support of its summary judgment motion: (1) that plaintiff's signed resignation and acceptance of three months' severance pay bar his contract claim; (2) that plaintiff's claims are barred by the statute of frauds; (3) that plaintiff's allegation of reliance is insufficient to establish an estoppel claim; and (4) that the alleged oral contract is too indefinite to be enforced.

For the following reasons, defendant's motion for summary judgment is ALLOWED.

BACKGROUND

In October of 1993 H & A offered the plaintiff, Bernard McTernan, the position of Corporate Controller with H & A. The offer letter, dated October 20, 1993, stated that the position paid "an hourly rate of $36.10 which represents an annualized salary of $75,088." The letter did not state that plaintiff would be guaranteed employment for any specific period of time.

Plaintiff and David Thompson, the president of H & A, arranged a meeting to discuss this offer, and did in fact meet at a bagel store in Burlington in early November to address plaintiff's reservations about accepting the job. Plaintiff, who was then employed with the firm of Holland Mark Martin, testified in his deposition that the following exchange took place between he and Thompson:

> I said, three things. I said I had a wife, two kids and a large mortgage; I wanted a long-term commitment because I've had a lot of jobs. I don't want to be back out job-hunting in two years.

> Dave replied quickly, "We never fire anyone at H & A. That could be part of our problem."

> I told him that I wanted to be in charge of the accounting department, and I told him I wanted to have fun. (McTernan Dep., p. 67.)

...

> He said, "As president of H & A, I will guarantee that," and reached over and shook my hand. (McTernan Dep., pp. 70, 71.)

The plaintiff acknowledges that Thompson never stated that he had an employment contract for two years. (McTernan Dep., pp. 71-73.)

The plaintiff accepted the position, and began working in December, 1993. In May 1994, plaintiff met with Bill Markot, Vice President of Finance and Administration of H & A and Tom Breuer, a consultant to H & A. On the day following the meeting, plaintiff signed a resignation letter which was dated May 17, 1994, and which was addressed to Markot. The letter was prepared by Markot, and the plaintiff was given a chance to examine it prior to signing. The letter stated that "by mutual agreement" the plaintiff would remain with H & A for a period not to exceed three months, and that he would have reassigned responsibilities. Subsequent to signing this letter, plaintiff remained at H & A until August 18, 1994, was paid in full for that period, and has kept the money which was paid him. (McTernan Dep., pp. 153, 154.)

DISCUSSION

*2 This court grants summary judgment where there are no genuine issues of material facts and where the

summary judgment record entitles the moving party to judgment as a matter of law. *Cassesso v. Commissioner of Correction,* 390 Mass. 419, 422, 456 N.E.2d 1123 (1983); *Community National Bank v. Dawes,* 369 Mass. 550, 553, 340 N.E.2d 877 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue, and that the summary judgment record entitles the moving party to judgment as a matter of law. *Pederson v. Time, Inc.,* 404 Mass. 14, 16-17, 532 N.E.2d 1211 (1989). The nonmoving party's failure to prove an essential element of its case "renders all other facts immaterial" and mandates summary judgment in favor of the moving party. *Kourouvacilis v. General Motors Corp.,* 410 Mass. 706, 711, 575 N.E.2d 734 (1991), citing *Celotex v. Catrett,* 477 U.S. 317, 322 (1986).

Applying this standard, the Court grants summary judgment on the basis that plaintiff's signed resignation and acceptance of three months' severance pay bar his claims of breach of contract and promissory estoppel.

A. The Resignation and Acceptance of Severance Pay

The plaintiff claims that he had a two-year employment contract with defendant. Assuming that there is such a contract (which is unlikely for the reasons set forth below regarding the statute of frauds and promissory estoppel), the plaintiff claims that the resignation letter of May 17, 1994 is not effective as a modification of the contract because it was signed under duress.

However, the plaintiff cited no facts in support of his duress claim until he submitted an affidavit accompanying his memorandum in opposition to the defendant's motion for summary judgment on May 24, 1995. In the memorandum and the accompanying affidavit, the plaintiff claims that Markot and Breuer told him that if he "wanted to remain at H & A for the next three months with pay while [he] was looking for another job, that [he] should sign a letter of resignation stating that [he] voluntarily resigned from H & A." (McTernan's Affidavit, para. 17.) He also stated that he "felt pressured and compelled to sign the letter of resignation because without the three months pay [he] would have been unable to provide for [his] family or to pay [his] bills," and that he was under such duress at the time he signed that he failed to understand misstatements in the letter. (McTernan's Affidavit para. 19, 20.)

These statements deviate from his deposition of December 14, 1994, in which he testified extensively regarding the circumstances at the time of his resignation, yet never mentioned that he felt pressured or compelled to sign the letter. (McTernan's Dep., pp. 110-13.) "A party cannot create a disputed issue of fact by the expedient of contradicting by affidavit statements previously made under oath at deposition." *O'Brien v. Analog Devices, Inc.,* 34 Mass.App.Ct. 905, 906, 606 N.E.2d 937 (1993). The plaintiff's deposition statement is very complete and thorough. In it, he makes no reference whatsoever to being pressured or compelled to sign the letter. His subsequent affidavit statement is contradictory to his earlier deposition. The logic of *O'Brien* applies, and the affidavit statement will not be considered to create a disputed issue of fact.

*3 Even if the plaintiff's affidavit were viewed as being supplementary rather than contradictory, his allegations in support of his duress claim would be insufficient to give rise to a disputed issue of material fact. In his memorandum in opposition to the defendant's motion for summary judgment, plaintiff claims that he "felt pressured and compelled to sign the letter of resignation because without the three months pay he would have been unable to provide for his family or pay his bills." (McTernan's Memorandum in Opposition, p. 3.) However, a case cited by the plaintiff states that "[m]erely taking advantage of another's financial difficulty is not duress. Rather, the person alleging financial difficulty must allege that it was contributed to or caused by the one accused of coercion." *International Underwater Contractors, Inc. v. New England Tel. & Tel.,* 8 Mass.App.Ct. 340, 342, 393 N.E.2d 968, quoting 13 Williston, Contracts § 1617, at 708. Aside from conclusory allegations in the plaintiff's memorandum in response to the defendant's motion for summary judgment, there are no facts in support of plaintiff's claim that H & A contributed to his financial situation. Though plaintiff informed H & A's president in November, 1993 that he had a wife, two kids and a large mortgage, there is nothing else in the record to indicate that anyone at H & A knew anything more than that about his financial condition. The defendant did not induce plaintiff to contract for a large mortgage, to get married or to have two children. Nor did plaintiff do any of these things in reliance upon anything the defendant said.

In support of his duress claim, the plaintiff also cites *Mulgrew v. Taunton,* 410 Mass. 631, 574 N.E.2d 389 (1991), for the proposition that a resignation is effective to terminate an employment contract only if it is free from fraud, coercion or duress. (McTernan's Memorandum in Opposition to Summary Judgment at 5.) More accurately, *Mulgrew* holds that "A resignation that is free of fraud, coercion or duress operates to terminate a police officer's right to continued compensation." *Id.* at 639, 574 N.E.2d

389. In fact, the *Mulgrew* Court considered the facts that the plaintiff tendered a written resignation, and that the resignation was dated so as to allow the plaintiff to receive paid sick days, as factors which indicated that his resignation was voluntary and that he was not entitled to further compensation. The similar facts of this case (a signed letter of resignation and the acceptance of three months' salary) leads this court to a similar conclusion.

The only other case cited by the plaintiff in support of his duress claim is *Avallone v. Elizabeth Arden Sales Corp.,* 344 Mass. 556, 183 N.E.2d 496 (1962). *Avallone* was a suit to determine the validity of an employment contract. In seeking to invalidate the contract on the grounds of duress, the plaintiff testified that she was "confused and upset and couldn't think clearly"; and that the defendant's officers observed her while she was in that state of mind. The Supreme Judicial Court held that such testimony about her state of mind was not sufficient to justify a master's finding that the officers knew of the plaintiff's condition, absent facts to indicate that there were external signs of the condition which the officers should have noticed. *Avallone,* 344 Mass. at 561, 183 N.E.2d 496.

*\*4* Likewise, aside from the naked assertions in the McTernan memorandum in opposition to summary judgment, there is no evidence in the record to indicate that Markot or Breuer were aware of McTernan's allegedly distressed condition at the time he signed the letter of resignation. Even if the plaintiff could show that Markot or Breuer knew that the plaintiff had a wife, two kids and a large mortgage, he still has not submitted any facts which would establish that they knew that he was distressed about his financial condition or that they took advantage of the alleged distress.

Summary judgment is therefore granted for the defendant on the basis that if a contract existed (which probably is not the case, for the reasons set forth below), it was clearly modified by the plaintiff's voluntary letter of resignation and acceptance of three months' severance pay. Given this finding, the court need not decide whether summary judgment should be granted based upon any of the other three theories put forward by the defendant. If a contract were to be found to exist on the basis of either an oral agreement or promissory estoppel, the plaintiff's subsequent actions would be a modification and would preclude him from suing for the alleged breach. Nonetheless, a brief synopsis of these other three issues follows.

B. Statute of Frauds:

The statute of frauds states that

> No action shall be brought:
>
> ... Upon an agreement that is not to be performed within one year from the making thereof;
>
> Unless the promise, contract or agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or by some person thereunto by him lawfully authorized.

Mass.G.L.c. 259 § 1 (1992 ed.). The plaintiff claims, however, that the defendant should be barred from asserting the statute of frauds, based upon the doctrine that "where a party against whom enforcement of an oral contract is sought has made a material misrepresentation, that party may be estopped from raising the statute of frauds defense." *Frederick v. ConAgra, Inc.,* 713 F.Supp. 41, 45 (D.Mass.1989) (quoting *Greenstein v. Flatley,* 19 Mass.App.Ct. 351, 356, 474 N.E.2d 1130). In order for the defendant to be precluded from asserting the statute of frauds as a defense, the plaintiff must establish the existence the existence of three factors:

> (1) A representation or conduct amounting to a representation intended to induce a course of conduct on the part of the person to whom the representation is made. (2) An act or omission resulting from the representation, whether actual or by conduct, by the person to whom the representation is made. (3.) Detriment to such person as a consequence of the act or omission.

*Cellucci v. Sun Oil Co..* 2 Mass.App.Ct. 722, 728, 320 N.E.2d 919 (1974).

Focusing upon the first of the three criteria, the court is inclined to agree that there may be a question of fact as to David Thompson's intent when he stated "As president of H & A, I will guarantee that." (McTernan's Dep. at 70.) Summary judgment is generally disfavored where intent or state of mind questions are at issue. *Pederson v. Time, Inc.,* 404 Mass. 14, 17, 532 N.E.2d 1211 (1989); *Flesner v. Technical Communications Corp.,* 410 Mass. 805, 809, 575 N.E.2d 1107 (1991).

*\*5* Despite the plaintiff's argument, the court recognizes *Chmura v. Ingham,* No. 89-2826-Mc (D.Mass. Aug. 1990), as persuasive authority for the proposition that the

plaintiff's estoppel theory should only be applied in cases where there are claims of fraud and deceit as well as breach of contract. Indeed, Judge McMaught distinguished *Chmura* from *Frederick* on that very basis and granted the defendant's motion to dismiss. *Chmura, supra* at 3. Since plaintiff here has not alleged fraud or deceit, the rationale of *Chmura* enables the defendant to assert the statute of frauds, and summary judgment may be granted for the defendant on this basis as well.

### C. Promissory Estoppel

Plaintiff claims that, even if the statute of frauds prevents him from proving the existence of a formal contract, a contract should nonetheless be found to exist on the basis of the doctrine of promissory estoppel. In support of this contention that he need not allege a misrepresentation on the part of the defendant to recover on a promissory estoppel theory, the plaintiff cites . *Loranger Construction Corp. v. E.F. Hauserman Co.,* 376 Mass. 767, 383 N.E.2d 1115 (1978). *Loranger* held that "[a]n offer which the offeror should reasonably expect to induce action or forbearance of a substantial character on the part of the offeree before acceptance and which does induce such action or forbearance is binding as an option contract to the extent necessary to avoid injustice." *Loranger,* 376 Mass. at 760, 384 N.E.2d 176, quoting Restatement (Second) of Contracts § 89B(2).

The offer which was at issue in *Loranger* was far more specific than the alleged contract in this case. There, a subcontractor submitted an estimate for a specific sum of money for specific work, and the contractor relied upon that estimate in submitting a bid for a construction contract. *Loranger,* 376 Mass. at 758, 384 N.E.2d 176. The plaintiff's reliance on *Loranger* works against him in two ways. First, the Supreme Judicial Court recently stated that the *Loranger* Court's "use of the words 'offer' and 'promise' in the sense of 'commitment' mirrors the Restatement's definition of 'promise' as 'a manifestation of an intention to act or refrain from acting in a specified way, so as to justify a promisee in understanding that a *commitment* has been made." *Rhode Island Hospital Trust National Bank v. Varadian,* 419 Mass. 841, 849, 850, 647 N.E.2d 1174 (1995), (emphasis in original); quoting Restatement (Second) of Contracts § 2. Though the plaintiff may argue that Thompson's statement was one of commitment which manifested an intention to act in a specified way (i.e., to be bound by a two-year contract), there are no corroborating facts to support such an argument.

\*6 Secondly, the *Loranger* decision held that "[w]hen a promise is enforceable in whole or in part by virtue of reliance, it is a 'contract' and it is enforceable pursuant to a 'traditional contract theory' antedating the modern doctrine of consideration." *Loranger,* 376 Mass. at 761, 384 N.E.2d 176. Therefore, even if the plaintiff could establish the existence of a contract based upon promissory estoppel, the contract nonetheless would have been modified by his subsequent actions (see part A *supra*) and the plaintiff would be estopped from asserting any claims on the contract.

### D. Indefiniteness of the Alleged Contract:

In determining "whether there is a contract for services for a definite period of time," the court looks toward "all the attendant conditions surrounding the agreement, as well as upon its terms, when the latter are not specific and clear." *Maynard v. Royal Worcester Corset Co.,* 200 Mass. 1, 4, 85 N.E. 877 (1908). The court also may consider the nature of the employment, the usages of the business, prior negotiations, and the situations of the parties. *Mahoney v. Hildreth & Rogers Co.,* 332 Mass. 496, 498, 125 N.E.2d 788 (1955).

Applying the standard of *Mahoney* and *Maynard,* each of which was cited by the plaintiff, the alleged contract is too indefinite to enforce. Viewed along with all the attendant circumstances, the plaintiff's claim of a two-year contract is logically inconsistent with the facts asserted. The facts show that Thompson responded that he would "guarantee that" after plaintiff stated his desires to have a long term commitment, to not be out looking for work in two years, to be the head of the accounting department and to have fun. (McTernan's Dep., pp. 67, 70, 71.)

Plaintiff claims that this guarantee should result in a two-year contract. However, if a two-year contract were found to exist, it certainly would not guarantee that the plaintiff would not be out looking for work in two years. To the contrary, a contract would necessarily have to be for a period of time *greater* than two years in order to guarantee that the plaintiff would not be looking for work in two years. The plaintiff implicitly recognizes this in his memorandum in opposition to summary judgment, by stating that "[a] reasonable person in McTernan's position would interpret the words 'I guarantee that' as an unconditional promise that he had *at least* a two year contract." (Plaintiff's Memorandum in Opposition to Summary Judgment, p. 10, 11; emphasis added.) The use of the words "at least" indicate that the alleged contract

could be for *any* period of time *beyond* two years. Such a contract could be for two years and one day, for three years, or for fifty years-the period of time is entirely unclear. Thus the terms of the alleged contract are indefinite and unenforceable, and summary judgment would be appropriate on this basis as well.

ORDER

*7 For the foregoing reasons, it is hereby ORDERED that summary judgment enter for defendant Haley & Aldrich.

**All Citations**

Not Reported in N.E.2d, 1995 WL 1146823

End of Document                                         © 2017 Thomson Reuters. No claim to original U.S. Government Works.