# Exhibit K

Tomer v. Hollister Associates, Inc., 70 Mass.App.Ct. 1104 (2007)
874 N.E.2d 1142

70 Mass.App.Ct. 1104
Unpublished Disposition
NOTICE: THIS IS AN UNPUBLISHED OPINION.
Appeals Court of Massachusetts.

David N. TOMER,
v.
HOLLISTER ASSOCIATES, INC.

No. 06–P–994.
|
Oct. 5, 2007.

*MEMORANDUM AND ORDER PURSUANT TO RULE 1:28*

**\*1** The plaintiff, David N. Tomer, who was an at-will employee of Hollister Associates, Inc. (Hollister), filed suit in Superior Court seeking to recover compensation allegedly owed to him after Hollister reduced his annual salary from $400,000 to $75,000. The complaint alleged breach of contract (count one), unjust enrichment (count two), and sought a declaratory judgment that the noncompetition clause of Tomer's employment agreement was unenforceable (count three). A Superior Court judge granted summary judgment in favor of Hollister as to counts one and two and in favor of Tomer as to count three. Tomer appeals from the order granting summary judgment on count one only, claiming that the judge erred because he ignored a factual dispute whether Tomer's employment agreement was validly modified to permit the reductions in his salary. We affirm.

1. *Facts.* We summarize the facts in the light most favorable to Tomer. See *Augat, Inc. v. Liberty Mut. Ins. Co.,* 410 Mass. 117, 120 (1991).

Hollister is a privately held Massachusetts corporation engaged in temporary and permanent personnel placement to other businesses. [R.A. 7] Kip Hollister (Kip) is the company's president and sole shareholder. [*Ibid.*] In 1992, Hollister hired Tomer as director of Hollister's financial and administrative support divisions. [*Ibid.*] On May 11, 1992, the parties signed an employment agreement (the 1992 agreement) which expressly stated that Tomer was being hired for a one-year term, at a "guaranteed salary of $65,000, paid weekly, beginning May 11, 1992 and ending May 11, 1993 ." [R.A. 94] Tomer continued in Hollister's employ thereafter.

On December 5, 1996, Tomer and Hollister entered into a new employment agreement (the 1996 agreement) providing, among other things, that Tomer would become a full-time, at-will employee with an increase in salary to $100,000, plus a bonus. The 1996 agreement also contained a noncompetition clause that prohibited the plaintiff from engaging in similar work during the duration of his employment at Hollister and for an eighteen-month period thereafter. [R.A. 104–105]

By the year 2000, Hollister's revenues exceeded $23 million and Tomer earned $966,317.[1] [R.A. 138, 145] In June of 2000, despite the fact that the 1996 agreement required all modifications to the employment contract to be in writing, Tomer and Kip orally agreed that Tomer's annual salary would be increased to $400,000, plus bonuses based on the company's annual sales. [R.A. 129, App. Br. 6] The new compensation package was effective immediately and was subsequently reduced to writing when the parties entered into another employment agreement dated December 31, 2000 (the 2000 agreement). [R.A. 109]

The 2000 agreement consisted of two documents: (1) a memorandum outlining the compensation terms; and (2) a thirteen page agreement setting forth various employment conditions. [R.A. 109, 159] Section 5 of the 2000 agreement is entitled "At–Will Employment" and reads as follows:

> **\*2** "Executive [Tomer] acknowledges that his employment with the Company [Hollister] is 'at-will' in nature, meaning that his employment may be terminated at any time by either the Company or the Executive for any reason. If Executive chooses to voluntarily terminate his employment pursuant to this Section 5, Executive agrees to give Hollister three (3) months prior written notice of his intention to terminate his employment. Hollister will provide Executive with three (3) months prior written notice of termination of his employment, except that Hollister may terminate Executive's employment at any time without prior written notice for cause. Executive understands and agrees that the restrictions and duties set forth in paragraphs 6 and 7 are continuing in nature and shall survive any termination of his employment with the Company." [R.A. 116]

Section 6 sets forth a revised noncompetition clause that extended the noncompetition period from eighteen months after the termination of the plaintiff's employment to five years. [R.A. 117] Finally, section 15 of the

Tomer v. Hollister Associates, Inc., 70 Mass.App.Ct. 1104 (2007)
874 N.E.2d 1142

agreement is an integration clause that reads as follows:

> "This Agreement constitutes the entire agreement of the parties with respect to the subject matter hereof and there are no understandings or agreements relative hereto which are not fully expressed herein. All prior agreements with respect to the subject matter of this Agreement are superseded by this Agreement. No amendment to or waiver or discharge of this Agreement will be valid unless in writing and signed by both of the parties hereto." [R.A. 121]

Due to a downturn in the economy, Hollister's financial success soured. Its revenues fell from $23 million in 2000 to $16.2 million in 2001 and still further to $6.3 million in 2002. [R.A. 145] As a result, in June 2001, Hollister's accountant, Larry Schwartz, recommended a twenty per cent pay cut for all Hollister employees. [R.A. 124–125]

Tomer and Kip discussed how and when to implement the pay cut via electronic mail (e-mail) on June 14, 2001. At one point during the exchange, Tomer stated: "[I am] down for [a] 20% [pay] cut.... [W]e need to evaluate month to month. [I]f we have to go deeper then so be it.... YES. F[* * *] IT. 20% NOW OR POTENTIAL FOR A LOT OF HURT LATER.... [W]e have no choice.... [S]taying alive is the name of the game." By the end of June, 2001, Tomer's salary was reduced by twenty per cent to $320,000 per year. [R.A. 126, 167]

In September 2001, the plaintiff's salary was reduced further to $200,000 per year. [R.A. 168] While Tomer does not dispute that he agreed to the first twenty per cent cut, he testified at his deposition that he "went ballistic" when Kip informed him that there would be a second reduction in his salary. [R.A. 175]

As Hollister's revenues continued to plummet, in April, 2002, a letter sent to all directors stated: "Given the current economic conditions and the state of our industry and company, we have had to reduce the compensation levels of the entire director and ownership members once again." [R.A. 130] Tomer's salary was further reduced to $100,000 and then again to $75,000. [R.A. 152] In March of 2004, Tomer notified Hollister that he intended to resign, effective June 1, 2004. [R.A. 131]

*3 During his deposition, Tomer acknowledged that he was an at will employee and that no one promised him that his salary "would be increased again." [R.A. 166] He also conceded that Hollister notified him in advance each time his salary was reduced, that each salary reduction was prospective and that he continued to work for Hollister at the lower salary following each reduction. [R.A. 83] Tomer testified, however, that he was forced to continue working at Hollister because he had a family to support and he had given his "clientele ... to everybody in the company." [R.A. 175] On appeal, Tomer also claims that he was unable to quit his job because he was involved in divorce proceedings and any change in his employment might result in "significant negative repercussions" and/or "possible court contempt sanctions." [Blue brief at 14–15]

2. *Discussion.* "Summary judgment is granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as matter of law.... The moving party bears the burden of affirmatively demonstrating the absence of a triable issue." *Commonwealth v. Two Parcels of Land,* 48 Mass.App.Ct. 693, 696 (2000).

Where the moving party will not have the ultimate burden of proof at trial, it may satisfy its summary judgment burden either by submitting affirmative evidence that negates an essential element of the opposing party's case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. *Flesner v. Technical Communications Corp.,* 410 Mass. 805, 809 (1991).

The judge properly granted summary judgment to Hollister on Tomer's breach of contract claim. It is undisputed that Tomer was an at-will employee, and as such, Hollister could "modify its terms or 'terminate[ ] [the employment] at any time for any reason or for no reason at all,' with limited exceptions, such as public policy considerations." *York v. Zurich Scudder Invs., Inc.,* 66 Mass App Ct. 610, 614 (2006), quoting from *Gram v. Liberty Mut. Ins. Co.,* 384 Mass. 659, 668 n. 6 (1981). See also *Cochran v. Quest Software, Inc.,* 328 F.3d 1 (1st Cir.2003). In *Gishen v. Dura Corp.,* 362 Mass. 177 (1972), the Supreme Judicial Court addressed the application of the at-will doctrine in circumstances almost identical to those presented here. In *Gishen,* the plaintiff was a seasoned salesperson who agreed to certain compensation changes during his employment which resulted in lowering his commission rate. The plaintiff then sued his former employer to recover the full commissions provided for in the parties' original agreement. The court held that, as matter of law, an at-will employee's decision to continue working for his employer after accepting significantly lower commission rates constituted both consideration and an assent to support a modification of his employment contract. *Id.* at 183.

As in *Gishen,* Tomer knew of the salary reductions and assented to each modification by continuing to work for Hollister. When the modifications took place, Tomer had

**Tomer v. Hollister Associates, Inc., 70 Mass.App.Ct. 1104 (2007)**
874 N.E.2d 1142

no right to continued employment and Hollister had no right to Tomer's future services. Thus, "each party provided consideration to the other sufficient to support a continuation of the employment relationship, on modified terms, for an indeterminate future period." *Cochran v. Quest Software, Inc., supra* at 10. Although Tomer voiced his objection, he nevertheless continued to work for Hollister for three years. Put another way, rather than terminate him, Hollister agreed to extend Tomer's employment in exchange for a reduction in salary. Since Tomer was not entitled to continued employment, he received the continued opportunity to earn a salary (albeit at a reduced rate) as consideration in support of the modifications.

*4 Like the judge, we conclude that in continuing to work for Hollister after his salary was reduced, Tomer assented to and received adequate consideration for the modifications to the 2000 agreement.[2] Tomer's argument that any modification to his salary was required to be in "writing signed by the parties" misses the point. "It is open to the parties to modify a written agreement by a later agreement not in writing.... The later agreement may be proved through the conduct of the parties." *Schinkel v. Maxi–Holding, Inc.* 30 Mass.App.Ct. 41, 47 (1991). See, *First Pa. Mort. Trust v. Dorchester Sav. Bank*, 395 Mass. 614, 625 (1985) ("It is a settled 'principle that the mode of performance required by a written contract may be varied by a subsequent oral agreement based upon a valid consideration" ' [citations omitted] ).

The issue here is whether there was a valid consensual modification, supported by consideration, to the 2000 agreement. The record demonstrates incontrovertibly that Tomer acquiesced to each salary reduction. It is uncontradicted that Tomer was aware that Hollister was experiencing financial difficulty and that future cost saving measures including salary cuts were anticipated.[3] The mere fact that Tomer argues that he only continued to work for Hollister because he "had no choice in the matter" does not alter our analysis.[4] Since his was an at-will employment, Tomer's belief that he was entitled to $400,000 annually during the duration of his employment was incorrect. Tomer's breach of contract claim thus fails and Hollister is entitled to summary judgment as matter of law.

*Judgment affirmed.*

**All Citations**

70 Mass.App.Ct. 1104, 874 N.E.2d 1142 (Table), 2007 WL 2908268

Footnotes

1  Tomer claims that $194,304 of this amount represents compensation from commissions earned in 1998 and 1999.

2  As a separate basis for his decision, the judge found that Tomer's June 14th e-mail correspondence with Kip to be a "writing" reflecting both Tomer's agreement to the first pay cut and to all future pay cuts. [R.A. 85] Because we determine that Tomer's conduct, i.e., his continued employment at Hollister, conclusively demonstrates that he agreed to the salary cuts, we need not address Tomer's argument that the judge's reliance on the e-mails was improper.

3  The summary judgment record includes Tomer's testimony from a deposition taken in connection with his divorce proceedings on June 25, 2002. In that testimony, Tomer acknowledges that his income had been affected by Hollister's loss of revenue and that "in the future" there was a "great potential" for terminating more employees. [R.A. 145]

4  We note that Tomer's argument that he was unable to quit his job due to professional and personal constraints is belied by the record which demonstrates that he was determined to stay at Hollister. During his deposition in his divorce proceeding, Tomer testified as follows:
   Q. "Have you had any discussions with Mrs. Hollister about redoing the employment contract?"
   A. "No, sir."
   Q. "Why not?"
   A. "We're just trying to stay alive and survive in a recession."
   Q. "Do you have any intention of leaving there?"
   A. "No, sir. I'm going down with the ship, if it goes down."
   [R.A. 146]

**Tomer v. Hollister Associates, Inc., 70 Mass.App.Ct. 1104 (2007)**
874 N.E.2d 1142

End of Document © 2017 Thomson Reuters. No claim to original U.S. Government Works.