UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| _____ | ) | |
| DR. HUGH DUCKWORTH, | ) | |
| | ) | Case No.        1:17-cv-11169-FDS |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| R3 EDUCATION INC., f/k/a | ) | |
| EIC HOLDING, INC., f/k/a | ) | |
| EIC ACQUISITION CORPORATION, | ) | |
| STEVEN C. RODGER, and | ) | |
| TERRY J. MOYA, | ) | |
| | ) | |
| Defendants | ) | |
| _____ | ) | |

MEMORANDUM OF LAW IN SUPPORT OF
PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Dr. Duckworth (Plaintiff or "Dr. Duckworth") hereby submits the following memorandum of law in support of his opposition to Defendants' R3 Education Inc. (f/k/a EIC Holding, Inc., f/k/a EIC Acquisition Corporation), Steven C. Rodger, and Terry J. Moya (collectively, the "Defendants") Motion to Dismiss.

Dr. Duckworth is a medical surgeon and previously was employed by R3 Education Inc. as Executive Dean of Saba University School of Medicine and Associate Dean of Basic Sciences of Medical University of the Americas and Saba University School of Medicine.  In connection with his employment, Dr. Duckworth is a party to a Securityholders Agreement and a Stock Option Agreement.  The Defendants wrongfully terminated Dr. Duckworth's employment on July 14, 2014, and wrongfully categorized such termination as "with cause" thereby depriving Dr. Duckworth of certain rights under the Securityholders Agreement and Stock Option Agreement.  Dr. Duckworth filed a complaint against Defendants alleging breach of contract and

breach of the implied covenant of good faith and fair dealing resulting from the Defendants'

wrongful conduct and violations of the Americans with Disabilities Act of 1990 ("ADA"), 42

U.S.C. §§ 12101 et seq., and the Massachusetts Antidiscrimination Statute, M.G.L. c. 151B.

Defendants' motion should be denied, as Plaintiff's complaint clearly lays out sufficient

facts supporting his claim. Moreover, as the complaint makes clear, there are issues of fact

concerning the July 1, 2013, letter upon which the Defendants' entire motion to dismiss is based.

## I.      FACTS AND BACKGROUND

Dr. Duckworth is a medical surgeon and previously was employed by R3 Education Inc.

as Executive Dean of Saba and Associate Dean of Basic Sciences of MUA and Saba. (See

Exhibit A – Complaint at ¶ 13)

**Securityholders Agreement**

Dr. Duckworth became a party to a Securityholders Agreement among the Company and

its securityholders dated April 3, 2007 (the "Securityholders Agreement") by executing a Joinder

to Securityholders Agreement dated December 10, 2008. (See Exhibit A – Complaint at ¶ 14)

The Securityholders Agreement provides:

> "upon the occurrence of a Call Event affecting a Management Stockholder, the
> Company shall have the right to purchase from such Management Stockholder,
> and upon exercise of that right such Management Stockholder shall sell to the
> Company (a "Call"), all, but not less than all, of the Shares held by such
> Management Stockholder at the Purchase Price and during the Exercise Period
> applicable thereto as described opposite the Call Event in Schedule 2 hereto."
> (See Exhibit A – Complaint at ¶ 15)

The Securityholders Agreement defines "Call Event" as:

> "the first to occur of any of the Triggering Events affecting such Management
> Stockholder as set forth in Part II of Schedule 2 hereto." (See Exhibit A –
> Complaint at ¶ 16)

The Securityholders Agreement defines "Triggering Event" with respect to a Management

Stockholder as:

> "the termination of his or her employment relationship with the Company or any successor entity or other entity controlled by the Company, for any reason.  Every Triggering Event shall fall within one (and only one) of the following categories: (A) a termination for Cause, (B) a termination without Cause, (C) a resignation by such Management Stockholder (other than upon Retirement), (D) such Management Stockholder's death, (E) such Management Stockholder's Retirement, or (F) such Management Stockholder experiences a Permanent Disability." (See Exhibit A – Complaint at ¶ 17)

Schedule 2 of the Securityholders Agreement sets forth the Purchase Price for the various

Triggering Events.  (See Exhibit A – Complaint at ¶ 18) In particular, for a Termination with

Cause, the Purchase Price is the "Lower of Initial Value and Book Value"; whereas, for a

Termination without Cause, the Purchase Price is "Stipulated Value." (See Exhibit A –

Complaint at ¶ 18)

**Stock Option Agreement**

Dr. Duckworth is also a party to a Stock Option Agreement by and between Dr.

Duckworth and the Company dated as of December 1, 2008 (the "Stock Option Agreement").

(See Exhibit A – Complaint at ¶ 20) The Stock Option Agreement provides:

> "The Company hereby grants to the Optionee [Dr. Duckworth] as of the date hereof (the "Grant Date"), subject to the terms and conditions set forth, an option (the "Option") to purchase 255 shares of the Company's common stock, par value $.001 per share (the "Stock"), at the purchase price of $100 per share (the "Purchase Price"), which price represents not less than the fair market value of each share on the date hereof." (See Exhibit A – Complaint at ¶ 21)

The Stock Option Agreement also provides:

> "If the Optionee's employment with the Company or any subsidiary is terminated by the Company or such subsidiary for Cause (as defined in the Securityholders Agreement), then this Option shall thereupon be forfeited.  If the Optionee's employment with the Company or any subsidiary is terminated by the Company or such subsidiary without Cause or is terminated by the Optionee, then, subject to paragraph (a), this Option may be exercised by the Optionee until the later of

(i) twelve months after the date of the termination of Optionee's employment (provided, that Optionee acknowledges that the Option may not qualify as an ISO unless the Option is exercised within three months after such termination date) and (ii) if the Company becomes a reporting company under the Exchange Act before the date specified in clause (i), twelve months after it becomes a reporting company, but not later than the expiration date specified in paragraph (c)." (See Exhibit A – Complaint at ¶ 22)

## July 1, 2013 Letter

On July 1, 2013, Dr. Duckworth was presented with a letter by Defendants. (See Exhibit A – Complaint at ¶ 35) He was threatened with immediate termination if he refused to accept its terms and conditions.  (See Exhibit A – Complaint at ¶ 35) In particular, the July 1, 2013 letter states:  "The offer to continue your employment on these terms and conditions will remain open until 5:00 p.m. on July 28, 2013.  If the offer is not accepted by that time, the offer will expire and you will be terminated for cause effective immediately." (See Exhibit A – Complaint at ¶ 35) The July 1, 2013 letter provides: "With respect to your participation in any employee stock option plans of the Company or any related or affiliated entity, you agree to forfeit all employee stock options that, as of the date of this letter, are unvested or are vested but not exercised." (See Exhibit A – Complaint at ¶ 34)

As the letter makes clear, it was a 'take it or leave it' proposition and Dr. Duckworth was neither invited, nor permitted, to negotiate any terms contained therein. Ultimately, although Dr. Duckworth disputed the contents of the letter, specifically, but not solely, the allegations of unidentified "repeated insobriety while rendering services as an employee" referenced in the July 1, 2013 letter, Defendant Rodger assured Dr. Duckworth that he would keep his job so long as he signed the July 1, 2013 letter. Based on this, Dr. Duckworth signed the letter. (See Exhibit A – Complaint at ¶ 36)

**July 14, 2014 Letter**

Dr. Duckworth's employment with R3 was terminated by a letter dated July 14, 2014. (See Exhibit A – Complaint at ¶ 26) The Company's July 14, 2014 letter to Dr. Duckworth states "[t]he termination is for cause, in accordance with Paragraph 8 of the terms and conditions of our letter agreement ("Letter Agreement") dated July 1, 2013 (Re: Agreement Concerning Continued Employment)." (See Exhibit A – Complaint at ¶ 28) The Company's July 14, 2014 letter does not expressly identify the purported "for cause" allegedly justifying termination; however, Paragraph 8 of the July 1, 2013 letter provides

> "[t]hroughout your continued employment with the Company, you will be subject to termination at will, i.e., at any time and for any reason, or for cause, including but not limited to your repeated insobriety prior to the date of this letter." (See Exhibit A – Complaint at ¶ 30)

The July 14, 2014 letter and July 1, 2013 letter do not identify any alleged instances of "insobriety" or detail any examples of how such purported instances of insobriety interfered with Dr. Duckworth's job performance nor do they detail any "repeated insobriety or any use of illegal drugs while rendering services as an employee" as would be required to satisfy the "Cause" requirement under the Securityholders Agreement and Stock Option Agreement. (See Exhibit A – Complaint at ¶ 31)

The letters do, however, make clear that the Company regarded Dr. Duckworth as an alcoholic. For instance, the July 1, 2013 letter commanded Dr. Duckworth to "immediately seek appropriate professional help for your substance abuse problem." Indeed, the July 1, 2013 letter sought to require Dr. Duckworth to "permit your treatment provider(s) to disclose to the Company information concerning your compliance with and progress in that treatment . . . ." (See Exhibit A – Complaint at ¶ 32)

At the time of his termination, Dr. Duckworth held 319 shares of common stock of the company. (See Exhibit A – Complaint at ¶ 43) The July 14, 2014 letter seeks to deprive Dr. Duckworth of his rights under the Securityholders Agreement.  (See Exhibit A – Complaint at ¶ 42) In particular, the Company seeks to deprive Dr. Duckworth of the "Stipulated Value" of his shares of common stock. (See Exhibit A – Complaint at ¶ 42) By characterizing Dr. Duckworth's "Triggering Event" as "termination with cause", rather than "termination without cause", the Company wrongly seeks to pay Dr. Duckworth the lower of the "Initial Value" and "Book Value" rather than the "Stipulated Value" in relation to his forced sale of stock back to the Company. (See Exhibit A – Complaint at ¶ 42)

## II.      LEGAL STANDARD

In considering motions to dismiss based upon the sufficiency of the pleadings, this Court "must construct the [pleading] liberally, treating all well-pleaded facts as true and indulging all reasonable inference in favor of the [non-moving party]." Katin v. National Real Estate Information Services, Inc., 2009 WL 929554, *2 (D. Mass. Mar. 31,2009) (Woodlock, J.). Under Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 559 (2007), a motion to dismiss should be denied if the challenged pleading alleges sufficient facts to demonstrate a "plausible entitlement to relief," even if "actual proof of those facts is improbable, and a recovery is very remote and unlikely." The "plausible entitlement to relief' standard "simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the allegations. Katin, supra, at *2, citing Twombly, supra, at 556.

## III.     ARGUMENT

Central to Defendants' motion to dismiss, and their defense, is the validity of the July 1, 2013, letter that Defendants demanded Plaintiff execute. Defendants argue in their motion that the

letter is a waiver or release and, therefore, all of Plaintiff's claims are barred. In effect, in exchange for continued employment at a reduced salary and reduced duties, Dr. Duckworth gave up his interest in company stock and agreed to waive all claims against Defendants. As the complaint makes clear, Plaintiff disputes this. It is the Plaintiff's position that the release is not valid. Defendants did not present Plaintiff with viable options or the ability to negotiate the terms of the release and the document was executed under economic duress.

The Court must evaluate the totality of the circumstances in order to determine whether an employer has adequately demonstrated the knowing and voluntary character of an employee's asserted waiver. See Smart v. Gillette Co. Long-Term Disab. Plan, 70 F.3d 173, 181 (1st Cir. 1995). We have mentioned certain factors that typically inform this inquiry. These include:

> (1) the plaintiff's education, business experience, and sophistication;
>
> (2) the parties' respective roles in deciding the final terms of the arrangement;
>
> (3) the agreement's clarity;
>
> (4) the amount of time available to the plaintiff to study the agreement before acting on it;
>
> (5) whether the plaintiff had independent advice -- such as the advice of counsel -- when [signing] the agreement; and
>
> (6) the nature of the consideration tendered in exchange for the waiver.

Id. at 181 n.3. This list is intended to be illustrative rather than exhaustive. See id. at 181. Conducting this inquiry requires the use of a wide-angled lens. Hernandez v. Philip Morris USA, Inc., 486 F.3d 1 (1st Cir. 2007).

In this instance, analysis of the six Smart factors shows that Dr. Duckworth's waiver was not voluntary. Defendants unilaterally crafted the terms of the letter. Dr. Duckworth was not given an opportunity to negotiate the terms of the letter. Moreover, as the letter makes clear, it

was a 'take it or leave it' proposition and Dr. Duckworth was neither invited, nor permitted, to negotiate any terms contained therein. Rather, Dr. Duckworth was provided with a deadline by which he could sign the letter or be terminated. Defendants' reliance on the fact that Plaintiff had 21 days in which to review the letter is misleading. As there was no opportunity to negotiate or change the terms of the letter and his choices were sign the letter or be terminated, the amount of time Defendants granted Dr. Duckworth before demanding his signature is irrelevant and does not support Defendants' contention that the waiver was voluntary.

Nor was there any consideration paid by Defendants. Defendants claim that the consideration was the ability to continue working at a significant, albeit reduced, salary. However, in the July 1, 2013, letter, Defendants still reserved the right to terminate Dr. Duckworth *for the alleged transgression that prompted the July 1, 2013, letter* or for any other reason or no reason at all. After signing the letter, Dr. Duckworth didn't work; he remained on paid leave. Moreover, he was earning less than he was prior to executing the letter. This is not consideration. A contract must have consideration to be enforceable and "[i]n order for a contract to have valid consideration, the contract must be a bargained-for exchange in which there is a legal detriment of the promisee or a corresponding benefit to the promisor."   See Hinchey v. NYNEX Corp., 144 F.3d 134, 142 (1st Cir.1998) (quotations and citations omitted). There was no legal detriment to Defendants as a result of this letter; nor was there a benefit to Dr. Duckworth. The fact that Defendants did not fire Plaintiff is not sufficient consideration. As the Complaint makes clear, it is Plaintiff's position that Defendants did not have cause to terminate him at that time. Put simply, there was no consideration and the July 1, 2013, letter is not a valid contract.

Furthermore, in direct contradiction to the contents of the letter, Defendant Rodger assured Dr. Duckworth that he would keep his job so long as he signed the July 1, 2013 letter. (See Exhibit A – Complaint at ¶ 36) This was obviously untrue. Dr. Duckworth was not given his job back, as he remained out on paid leave. In addition, he was terminated less than one year later without warning or cause. Courts have invalidated liability releases on the basis of fraud where a party misrepresented or concealed the terms of the release. See King v. Motor Mart Garage Co., 336 Mass. 422, 426 (1957); Kean v. New York Cent. & H.R.R. Co., 210 Mass. 449, 452-53 (1912). As Plaintiff's complaint makes clear, it is his position that Defendant Rodger made misrepresentations to him in an effort to induce him to sign the July 1, 2013, letter. While Plaintiff presumes that Defendants' will deny this, it is clear that there are issues of fact surrounding the July 1, 2013, letter. Relying on it as the basis of a motion to dismiss is inappropriate and not permitted by relevant caselaw.

The Complaint also alleges that the July 1, 2013, letter is not enforceable because it was signed under duress. To sustain a claim of economic duress, a party must show that "(1) one side involuntarily accepted the terms of another; (2) that circumstances permitted no other alternative; and (3) that said circumstances were the result of coercive acts of the opposite party." Ismert & Associates, Inc. v. New England Mut. Life Ins. Co., 801 F.2d 356, 544 (1st Cir. 1986). As discussed above, it is Dr. Duckworth's position that there was no alternative to executing the letter. Moreover, as the complaint makes clear, it is Dr. Duckworth's position that the situation he found himself in when presented with the letter was manufactured by Defendants. Dr. Duckworth did not believe that Defendants had "cause" to terminate him. Duckworth disputed the contents of the letter, particularly the allegations of unidentified "repeated insobriety while

9

rendering services as an employee." (See Exhibit A – Complaint at ¶ 36) Dr. Duckworth was faced with what he believed to be false accusations and no options other than to sign the letter.

This isn't a situation where Defendants' gave Plaintiff a legitimate second chance for what it perceived to be as transgressions. Rather, Defendants knew that if they terminated Plaintiff without cause then they would be responsible to him for the full price of his stocks. This matter is akin to the line of cases determining that, absent the option to choose to keep working under lawful conditions, an employer's offer of a choice between early retirement with benefits or discharge without benefits is nothing other than a discharge. See  Hebert v. Mohawk Rubber Co., 872 F.2d 1104 (1st Cir. 1989); Calhoun v. Acme Cleveland Corp., 798 F.2d 559, 561 (1st Cir. 1986); Alicea Rosado v. Garcia Santiago, 562 F.2d 114, 119 (1st Cir. 1977).  Courts have determined in those situations that the offer was nothing more than a charade, that is, a subterfuge disguising the employer's desire to purge plaintiff from the ranks because of, in those cases, his age. See Hebert, 872 F.2d at 1111. Courts do not allow an "impermissible take-it-or-leave-it choice between retirement or discharge." Hebert, 872 F.2d at 1113.In the present matter, Defendants wanted to purge Plaintiff because of the financial commitments that they owed him under the Shareholders Agreement. Put Simply, Dr. Duckworth's choices were termination with no stock options or paid leave with no stock options for as long as Defendants wished. Offers which furnish employees a choice in name only are impermissible because, in the final analysis, they effectively vitiate the employees' power to choose.

Plaintiff contends that Defendants regarded Dr. Duckworth as an alcoholic, thus making him handicapped within the meaning of the Massachusetts Antidiscrimination Statute. For instance, the July 1, 2013 letter commanded Dr. Duckworth to "immediately seek appropriate professional help for your substance abuse problem."  (See Exhibit A – Complaint at ¶ 32)

Indeed, the July 1, 2013 letter sought to require Dr. Duckworth to "permit your treatment provider(s) to disclose to the Company information concerning your compliance with and progress in that treatment . . . ."  (See Exhibit A – Complaint at ¶ 32)

While Dr. Duckworth denies the accusations contained in the July 1, 2013, letter, Plaintiff contends that R3 employees, including the top management of the Company, had been intoxicated at Company events and had not been discharged or otherwise subjected to adverse employment actions.  For example, Mr. Roger and Dr. Yarwood demonstrated intoxication and acted inappropriately during Company sponsored events, without adverse consequences. Defendants enforced its disciplinary policy in a discriminatory manner by firing Dr. Duckworth, who was perceived to be handicapped, for purported prohibited conduct for which others were not fired. Defendants treated Dr. Duckworth differently from other employees who engaged in similar prohibited conduct.

Based on the fact that Plaintiff is handicapped within the meaning of the Massachusetts Antidiscrimination Statute, enforcing the release would shield Defendants from responsibility for violation of their "statutory duty" under that statute. Therefore, the Court's enforcement of the release would violate public policy. Zavras v. Capeway Rovers Motorcycle Club, Inc., 44 Mass. App.Ct. 17, 19 (1997); Henry v. Mansfield Beauty Academy, Inc., 353 Mass. 507, 511 (1968) (courts may decline to enforce releases where a release attempts to shield defendant from responsibility for violation of a statutory duty.) In Henry, the plaintiff, who had signed a release, sustained injuries while receiving services at a beauty school. 353 Mass. at 510. The Supreme Judicial Court held that the beauty school lost the protection from liability under the release based on the conclusion of the lower court that the beauty school violated a statute requiring the registration of all its students. Id. at 510-11.

The Court views the complaint's allegations in the light most favorable to the Plaintiff, not the reverse. Rule 12(b)(6). If, however, for some reason, the Court concludes that the current allegations are not sufficient, then Plaintiff respectfully requests that rather than granting the Motion, the Court grant him leave to amend his complaint. Under F.R.C.P. Rule 15(a), leave to amend is to be "freely given," and at this very early stage in the proceedings, there is absolutely no prejudice to the Defendant from such an Order. See <u>McMillan v. Mass. Society/or the Prevention a/Cruelty to Animals</u>, 168 F.R.D. 94 (D. Mass. 1995) (Stearns, DJ.) (allowing leave to amend counterclaims to further particularize existing claims after summary judgment filed).

## IV.    CONCLUSION

Defendants' motion to dismiss is based entirely on the validity of the July 1, 2013, letter. It is Plaintiff's contention, and he has alleged specific facts in support of this contention, that the July 1, 2013, letter is not a valid release. What we are left with is two different positions on the validity of a document central to this matter. Put differently, we are left with a question of fact. As such, dismissal is inappropriate.

WHEREFORE, Plaintiff requests that the Defendant's motion to dismiss be denied.

Dated:                                                              Respectfully Submitted,

                                                                    DR. HUGH DUCKWORTH,

                                                                    By his attorneys,

                                                                    /s/ Simon B. Mann

                                                                    _____
                                                                    Simon Mann BBO# 665301
                                                                    Kevin Mannix, BBO#640071
                                                                    Mann Law Firm, P.C.
                                                                    1071 Rt. 9 Suite 42
                                                                    Framingham, MA 01701
                                                                    508.270.0500
                                                                    simon@sbmannlaw.com
                                                                    kevin@sbmannlaw.com