UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. HUGH DUCKWORTH,<br><br>    Plaintiff,<br><br>v.<br><br>R3 EDUCATION, INC., f/k/a<br>EIC HOLDING, INC., f/k/a,<br>EIC ACQUISITION CORPORATION,<br>STEVEN C. RODGER, and<br>TERRY J. MOYA<br><br>    Defendants. | Case No. 1:17-cv-11169-FDS |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**
**(LEAVE TO FILE GRANTED ON SEPTEMBER 15, 2017)**

Duckworth's opposition to Defendants' Motion to Dismiss fails to undercut the validity of his release of all claims against the Defendants in the parties' July 1, 2013 Agreement.

**A.   Duckworth Fails to Identify Any Factors that Weigh in His Favor on the Validity of the Release.**

Duckworth agrees that Defendants correctly cited the six factors that courts in this circuit evaluate to determine the validity of an employee's release of claims against his employer. Opp. at 7. He argues that only two of the six factors favor his position, *id*. at 7-8, and those arguments are without merit.

Duckworth leans heavily on the second factor – the parties' respective roles in deciding the terms of the agreement – arguing that because the Agreement was a "take-it-or-leave it" deal, it does not matter how much time he was given to consider its terms. *Id.* Duckworth, however, is unable to distinguish the cases Defendants cited in their opening memorandum, in which the

employee likewise had no ability to negotiate the terms of the release, but other factors such as the period of time before the employee was expected to sign the release and the employer's encouragement to seek the advice of counsel, rendered the release knowing and voluntary.  Def. Mem. at 8, 12-13 (citing *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9 (1st Cir. 1997); *Keigney-Rodriguez v. President & Fellows of Harvard Coll.*, No. 1:17-cv-10501-ADB, 2017 WL 3388163 (D. Mass. Aug. 7, 2017)).  In *Keigney-Rodriguez*, this Court held that the plaintiff's release of claims against her employer, including claims under the Americans with Disabilities Act ("ADA"), was valid, notwithstanding her argument that she was "forced" to sign it, because she was given 21 days to review the agreement, was encouraged to meet with counsel, and was paid consideration.  2017 WL 3388163, at *3-4.  Similarly in *Rivera-Flores*, the employer presented plaintiff with a "take-it-or-leave it" letter of dismissal, which offered the alternative of voluntary separation benefits in exchange for signing a release.  112 F.3d at 11.  The First Circuit held that the release was knowing and voluntary because the plaintiff had 42 days to review the agreement, was advised to consult with an attorney, and received benefits in consideration of the agreement.  *Id.* at 12-13 (the employee's "sense that he was treated unjustly in this situation does not mean that his signing the Agreement was not voluntary or knowing.").

Duckworth's argument that the consideration factor supports his position is equally unavailing.  His claim that Agreement involved neither detriment to the promisor (R3) nor benefit to the promisee (Duckworth), Opp. at 8, is just wrong.  R3 had the right to terminate Duckworth's employment immediately with no separation benefits of any kind.  Pursuant to the Agreement, however, and in consideration of Duckworth's release, R3 agreed instead to place Duckworth on paid leave, at a significant salary, the payment of which was a detriment to R3 and a benefit to Duckworth.  *See* Def. Mem. at 10; *Keigney-Rodriguez*, 2017 WL 3388163, at *3

(lump sum payment, outplacement services and letter of recommendation sufficient consideration for determination that employee's release was knowing and voluntary).

For these and the other reasons discussed in Defendants' opening Memorandum, Duckworth's release of all claims against Defendants was knowing and voluntarily, and thus bars his complaint in this action.

### B. The Alleged Oral Representation that Duckworth Would "Keep His Job" Does Not Invalidate the Release.

Duckworth makes much of Defendant Steven Rodger's alleged oral promise that if Duckworth signed the Agreement he would get to "keep his job." Opp. at 4, 9. Duckworth, however, concedes that this alleged promise conflicted with the express terms of the Agreement, Opp. at 9, and that fact is fatal to his argument. As Defendants demonstrated in their opening Memorandum, the Agreement contains an integration clause, which provides that the Agreement supersedes all prior or contemporaneous representations or agreements. Mem. at 4, 14-15, and he Agreement provides that any amendment must be in a writing signed by both parties. *Id.* The alleged oral promise thus is unenforceable and does nothing to undercut the validity of the written contract. *Id.*

The cases Duckworth cites on this issue – *King v. Motor Mart Garage Co*, 336 Mass. 422 (1957) and *Kean v. New York Central & H.R.R. Co.*, 210 Mass. 449 (1912), Opp. at 9 – do not support his argument. Both *King* and *Kean* stand for the proposition that a release is voidable if it was obtained by fraudulent means "in circumstances where the party signing it did so without reading it, relying on that misrepresentation." *King*, 336 Mass. at 426; *see also Kean*, 210 Mass. at 452-53 (employer ordered employee to sign release immediately without reading it, telling him "it is an application for work and that is all I have to say about it"). This is not such a case.

Duckworth does not allege that Defendants misrepresented the content of the Agreement, or that he was told to sign it without reading it, or that in fact he did sign without reading it.

### C. Duckworth's "Constructive Discharge" Argument is Without Merit.

Duckworth seeks to end-run his release by claiming that the Agreement amounted to a "constructive discharge" – citing cases under the Age Discrimination and Employment Act "ADEA"), which stand for the proposition that where an employer offers an employee the choice between early retirement with benefits or termination, this amounts to a constructive discharge and may be evidence of discriminatory intent on the part of the employer.  Opp. at 10 (citing *Hebert v. Mohawk Rubber Co.*, 872 F.2d 1104 (1st Cir. 1989); *Calhoun v. Acme Cleveland Corp.*, 798 F.2d 559, 561 (1st Cir. 1986); *Alicea Rosado v. Garcia Santiago*, 562 F.2d 114, 119 (1st Cir. 1977)).  The argument is unavailing, however, for two reasons.

First, none of the cases on which Duckworth relies involves the validity of a release of claims against the employer.  They merely stand for the proposition that the circumstances of an employee's separation, if they amount to a constructive discharge, satisfy one element of the plaintiff's prima facie case of age discrimination – that the employee in fact was discharged from his or her employment.  *E.g.*, *Hebert*, 872 F.2d at 1111 (1st Cir. 1989).  Whether the plaintiff can satisfy the prima facie elements of a discrimination claim is irrelevant if, as in this case, the claim has been released.  See *Rivera-Flores v. Bristol-Myers Squibb Caribbean*, 112 F.3d 9, 14 (1st Cir. 1997) (plaintiff's argument that the district court erred by not first considering the merits of a claim against his employer was "exactly backwards," because even if the plaintiff had valid claims, he had waived them through a release).

Second, the cases on which Duckworth relies all involve claims of age discrimination under the ADEA, whereas this case involves a claim of disability discrimination under the ADA.

The ADEA contains specific requirements with respect to the release of age discrimination claims which do not appear in, and do not apply to claims arising under, the ADA. *See Rivera-Flores*, 112 F.3d at 12 ("Where Congress has wanted to insure particular protections for the employees in the procedures for obtaining releases, it has done so, for example in the Older Workers Benefits Protection Act amendments to the ADEA. 29 U.S.C. § 626(f). No such special procedures are set forth in the ADA."); *see also Rivera-Olmo v. State Ins. Fund Corp. (SIFC)*, 250 Fed. Appx. 365, 366 (1st Cir. 2007); *Keigney-Rodriguez v. President & Fellows of Harvard Coll.*, No. 1:17-cv-10501-ADB, 2017 WL 3388163 (D. Mass. Aug. 7, 2017). In particular, the First Circuit has held that, unlike in the ADEA context, there is no prohibition under the ADA against offering employees the choice between discharge and signing a release with benefits – to the contrary, the ADA encourages it. *Rivera-Flores*, 112 F.3d at 12; *see also Keigney-Rodriguez*, 2017 WL 3388163, at *3 (citing *Rivera-Flores*, 112 F.3d at 12, and *Rivera-Olmo*, 250 Fed. Appx. at 366).

**D.     Enforcing Duckworth's Release is Consistent with Public Policy Considerations Under the ADA.**

Duckworth asserts that the Court should not enforce the release because to do so would violate public policy, in that it would shield Defendants from responsibility for the alleged violation of their duties under the ADA. Opp. at 11. Here, too, the cases on which Duckworth relies simply do not support his argument. Duckworth cites *Henry v. Mansfield Beauty Academy, Inc.*, 353 Mass. 507 (1968), and *Zavras v. Capeway Rovers Motorcycle Club, Inc.*, 44 Mass. App. Ct. 17 (1997), neither of which involves claims under the ADA. Both are personal injury cases, which involve the plaintiff's advance waiver of negligence or other common law claims.

In *Henry*, the plaintiff was injured when she received a "permanent wave" hair treatment at a beauty school. 353 Mass. at 509. Although the plaintiff had signed a release before

receiving the treatment, the court refused to enforce it, allowing the plaintiff to maintain claims for negligence and breach of contract, because the defendant had violated a statute by permitting an unregistered student to work on the plaintiff's hair. *Id.* at 510. The court held that "the plaintiff could make a valid contract exempting the defendant from liability to her for injuries resulting from its negligence or that of its employees. But such a contract cannot serve to shield the defendant from responsibility for violation of a statutory duty." *Id.* at 511.

In *Zavras*, the plaintiff was injured while participating in a motorcycle race on the defendant's premises. 44 Mass. App. Ct. at 17-18. The plaintiff signed a release as a condition of his participation. *Id.* at 18. The Appeals Court upheld the trial court's decision that the release barred the plaintiff's negligence claim, but did not bar the claim for gross negligence. *Id.* at 18-19 (noting that a release may be invalid "for policy reasons … where a release attempts to shield a defendant from responsibility for violation of a statutory duty, [citing *Henry*], where a public utility attempts to limit its liability, or where there is an obvious disadvantage in bargaining power so that the effect of the contract is to put a party at the mercy of the other's negligence").

The principles at work in *Henry* and *Zavras* have no application to this case, which does not involve an advance waiver of personal injury claims, but instead involves a standard release of claims against an employer in consideration of significant benefits to the employee. As Defendants noted in their opening Memorandum, such agreements to resolve employment disputes, including claims under the ADA, instead of "violating public policy" are encouraged. *See Rivera-Flores*, 112 F.3d at 12 ("Prohibiting such waivers under the ADA on policy grounds arguably would display the same stereotyping and patronizing attitudes toward the disabled which Congress hoped to remedy in enacting the ADA. We conclude that such releases are

permissible under the ADA . . . ."); *Keigney-Rodriguez*, 2017 WL 3388163, at *3 (citing *Rivera-Flores*, 112 F.3d at 12, *Rivera-Olmo*, 250 Fed. Appx. at 366).

## CONCLUSION

Defendants' Motion to Dismiss should be allowed.

                            R3 EDUCATION, INC., ET AL.,

                            /s/ Daryl J. Lapp

                            Daryl J. Lapp (BBO #554980)
                              daryl.lapp@lockelord.com
                            Katherine A. Guarino (BBO #681848)
                              katherine.guarino@lockelord.com
                            LOCKE LORD LLP
                            111 Huntington Avenue
                            Boston, MA 02199

September 18, 2017           617-239-0100

## Certificate of Service

     I certify pursuant to Local Rule 5.2(b) that on September 18, 2017, this document was filed through the Electronic Case Filing System of the United States District Court for the District of Massachusetts and will be served electronically by the Court to the Registered Participants identified in the Notice of Electronic Filing.

                            /s/ Daryl J. Lapp

                            Daryl J. Lapp

AM 67172043.2